UNITED STATES v. LEE LIP et al.

(District Court, N. D. New York. March 21, 1900.)

ALIENS—PROCEEDINGS FOR DEPORTATION OF CHINESE—JURISDICTION AND DU-
    TIES OF COMMISSIONERS.

   The provisions of the Chinese exclusion acts authorizing Chinese persons thought to be unlawfully within the United States to be arrested, and taken before a commissioner, confer jurisdiction upon such commissioner to determine the cases, and no order of a district judge referring such cases to the commissioner for hearing is either required or authorized; but a commissioner cannot be required to entertain such cases in the face of an authoritative declination by the officers of the treasury department to pay his lawful fees and disbursements therein.

This was an application for a writ of habeas corpus on behalf of Lee Lip and others, in presenting which the following proceedings were had:

Mr. Moore: The defendants were arrested some time in December in Franklin county, charged with being Chinese persons found unlawfully within the United States, and, as such, arrested for deportation therefrom. They were taken before the United States commissioner. After some delay, warrants were laid before the commissioner, and they were committed to the Franklin county jail. Proceedings were adjourned from time to time until the 29th day of January, when they were further adjourned by the commissioner himself by reason of his illness. On the 2d day of February this year, the commissioner died, and soon thereafter a new commissioner, Mr. Frederick G. Paddock, of Malone, was appointed in his stead. By stipulation with the government agents and myself, it was agreed that these defendants should be tried before the new commissioner. They were taken before him, and in the meantime he had had some correspondence with the comptroller's office at Washington. It seems that there had been difficulty with that department as to commissioners' fees, and, as I am informed, the commissioners throughout the state, and also in the state of Vermont, have been held up in their fees for Chinese cases. This commissioner, being familiar with that fact, wrote the comptroller's office for a schedule of fees, and also direction as to how he should proceed so as not to have trouble in procuring fees. In response to that communication, the commissioner received an opinion from the comptroller giving him a schedule of fees, and saying that the comptroller's office held that those were civil cases, and that no fee could be charged, and no jurisdiction could be acquired upon the part of the commissioner, unless the commissioner, before he proceeded in the case, had an order referring it to him from the judge of the district, and for that reason that he should not consider the case until the order was procured. The matter was held in abeyance for some time—I think until the 7th of March—for the purpose of straightening the entanglement. Nothing had been accomplished on the 7th of March, and the case was further adjourned until the 13th of March. On the 7th of March the government appeared by Mr. Izard, the Chinese inspector, and by Mr. Stevenson, an attorney from Boston. The district attorney's office has not been represented in the proceeding until to-day, except as it was represented by Mr. Stevenson, who, I understand, has charge of these matters for that locality. On the first hearing I notified the officials for

the government that, unless they provided a court by the 13th for the trial of these defendants, I should take some steps to get them out upon a writ of habeas corpus, and informed Mr. Izard that he might notify the department to that effect. I believe he did communicate with the department on that day, before leaving Malone, that such was the condition of affairs. Nothing was accomplished on the 13th, the comptroller still holding to the opinion that these were cases civil in their nature, and for that reason that an order must be granted, and the commissioner still holding to his opinion that, whether the comptroller was right or wrong, that it was with that office that he would have to adjust his fees, and he should absolutely refuse to entertain the proceeding until there was an adjustment with the comptroller's office, and he would not entertain the cases. Under that state of facts, I sued out this writ of habeas corpus. The defendants are in jail, lying there without any process whatever to detain them, and, under the present arrangement of things, it seems to me that they would remain there indefinitely, because I am thoroughly satisfied that the comptroller's office at Washington would be entirely content to have these Chinese remain in jail as long as they would fold their arms, and see fit to do so; and for that reason I have sued out this writ, asking that they be discharged from the custody of the sheriff of Franklin county, who now holds them without process.

Mr. Brown: I have prepared a brief answer on the part of the marshal, or, rather, a return to the writ of habeas corpus, which substantially recites the facts as stated by counsel for the application. I think that counsel and myself, upon investigation of the case, differ in no essential particular as to any of the facts upon which this controversy is based. The slight opportunity that I have had, since the papers were placed in my hands yesterday, I have devoted to an examination of the question as to whether or not the comptroller's office is right in its holding that these proceedings are civil, rather than criminal, and that the United States commissioner can have no jurisdiction under the Chinese exclusion act except as it is conferred upon the commissioner by the United States district court judge. My notion upon the situation, after such brief examination as I have been able to give, is simply this: That the Chinese exclusion act itself confers unquestionable jurisdiction upon the United States commissioners to entertain complaints, to hear proofs, to adjudge, decide, and render deportation orders,—complete jurisdiction under the statute itself; and I am clear in my opinion that the comptroller's office is in error in claiming that the commissioner cannot entertain these complaints except as jurisdiction is conferred by the United States district court judge.

The Court: Do you find any authority giving the judge jurisdiction to make such an order?

Mr. Brown: None whatever. The Chinese exclusion act provides beyond question that a Chinaman found in the United States, and thought to be unlawfully within our borders, must be arrested by the marshal or collector, taken before the nearest United States commissioner, and there dealt with as specified in that statute; and the only suggestion in the Chinese exclusion act as to the duties of a United States district court judge is by an appeal from a decision of the commissioner. I can take no issue with the commissioner, Mr. Paddock, or any other commissioner who may be interested in a like case, when they say that they decline to exercise jurisdiction for the deportation of Chinese found under the circumstances that these seven are held by the marshal, unless they are assured by some competent authority that they are to receive compensation for services rendered in these proceedings. I have been advised, since the papers were placed in my hand, that the commissioner at Malone, Ex-Commissioner Mr. Badger, has an account against the government, representing hundreds of dollars, for services rendered five or six years ago, and that for none of the services that have been rendered by the commissioner at Malone,—and I think that I am equally correct in stating that as to commissioners at other points along this border,—that none of them have received compensation for services rendered in this class of cases for five or six years, and possibly longer; and I am advised that it is the intention of the commissioners residing in localities where these cases are likely to be presented to unite in a peremptory re-

fusal to entertain jurisdiction of this sort of cases until the question of their compensation has been adjusted by the representatives of the government at Washington. I am also advised that the United States attorney for the state of Vermont has presented this question to the department of justice and to the comptroller of the treasury and treasury department, and that the department of justice indorses the proposition that the comptroller is in error, and these commissioners are entitled to their compensation as though they were ordinary criminal cases. I think that this is the first step taken by any of the Chinamen, or the first case whereby the right of the compensation of the commissioner or the legality of the detention of the Chinamen depends or is liable to turn upon the right of the commissioner to entertain jurisdiction; in other words, that no habeas corpus has been taken out, or proceedings taken, in any other district, or from the commitment issued by any commissioner other than Mr. Paddock. And I can see no other result from this controversy except a wholesale discharge of Chinamen who may now be in the custody of the marshal of this district, and possibly the custody of the marshals of other districts, unless the comptroller of the treasury department, the auditor,—whoever the officer is,—sees a different light than he has thus far exhibited on the question or announced. But I have this suggestion to make, and, while I recognize that it may result in a temporary detention of these seven Chinamen referred to in this petition, and possibly may work temporary hardship upon them, I do not think counsel for the petitioners will seriously oppose the proposition; and that is, your honor, that this matter be held open for ten days or two weeks, that I have an opportunity of presenting to the department of justice the result of this application, in the event that no change is made in the holding with reference to the compensation of the United States commissioners; in other words, that the department of justice may be speedily and accurately advised of the result of this sort of a holding, unless there is some change made. And I think with this petition,—this writ of habeas corpus,—and the circumstances that have come to my knowledge, that I can frankly say to the attorney general that, unless some sort of a revision of the holding referred to by counsel is made by the comptroller of the treasury department, that the department of justice need not be surprised if the Chinamen now in the custody of the marshal are granted their discharge by this court upon this writ of habeas corpus. I think I can prepare a statement showing these facts, and present it to the attorney general, so that I will be able to say to your honor, say two weeks from to-day, the 2d of April, whether or not there is any disposition on the part of the department at Washington to do what it now appears they ought to do in dealing fairly towards the various commissioners that have these matters before them. That is all the answer I can make to this proposition.

Mr. Moore: If your honor pleases, in reference to that, I do not object to a short delay in the matter, but I think two weeks is too much time. It would not be too much time if the matter were new to the department. Commissioner Paddock has had some correspondence with the department, going over five weeks. I am informed by Mr. Paddock that Congressman Alexander, of Buffalo, has taken the matter up personally with the department. The district attorney of Vermont has taken it up personally; and I think Mr. Izard has made a trip to Washington,—at least he has made one or two reports in regard to it that are some four weeks old; so that the matter is not entirely new to the department, and it would simply be necessary for the district attorney to make a statement of the condition of this case, that it could expedite matters there; and the comptroller could reverse his opinion if he wanted to do so in a week, as well as he could in two weeks.

The petitioners have been in jail now over three months,—nearly four,—and there has not been one single move made towards their discharge. They are no nearer out than the first day they went in. I do object to the proceeding being held open. I do not think that the case ought to be held open, but I will consent that decision be reserved for a week from to-day or to-morrow.

The Court: I think decision should be made now. The proposition is too plain for discussion.

Mr. Brown: I do not want the absolute service to be made until I have an opportunity of presenting it to the department at Washington, so that they may understand the effect of the present condition of affairs.

Charles H. Brown, U. S. Atty.
Robert M. Moore, for defendants.

COXE, District Judge (orally). I am glad to hear that the district attorney, after an examination of the statute, has reached the same conclusion regarding this matter that has been entertained by the court from the time this controversy first arose. Unless my attention is called to some authority which I have not yet seen, I shall hold:

1. That the statute directing that Chinese persons shall be brought before the United States commissioners, clothes those officers with jurisdiction.

2. So far as I have been able to observe, there is not, from the beginning to the end of the legislation on Chinese immigration, a single word which authorizes a judge of the United States courts to refer these cases to the commissioners as referees.

3. That unless the statute gives the United States commissioners jurisdiction, there is no way in which they can acquire jurisdiction.

4. That the United States commissioner at Malone is clothed by law with full authority to hear these cases, but he is not called upon to entertain them in the face of an authoritative declination on the part of the executive officers of the government to pay his lawful fees and disbursements.

5. That the petitioners are entitled to have their cases heard as the law of the United States directs, and unless they are heard on or before April 3d the petitioners will be discharged without further application to this court.